UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 07-105

CHARLES EUGENE PREWITT                      SECTION: R(3)


## ORDER AND REASONS

Before the Court is petitioner Charles Eugene Prewitt's
motion to vacate, set aside, or correct his sentence under 28
U.S.C. § 2255.  (R. Doc. 253.)  For the following reasons, the
Court DENIES Prewitt's motion.


I.    BACKGROUND

On March 16, 2007, a federal grand jury issued an indictment
charging Prewitt with one count of participating in a conspiracy
to distribute and possess, with the intent to distribute, five or
more kilograms of cocaine hydrochloride in violation of 21 U.S.C.
§§ 846, 841(a)(1), and 841(b)(1)(A)(ii) (Count 1).  (R. Doc. 37.)
The indictment also charged Prewitt with using a cellular
telephone to commit the above acts in violation of 21 U.S.C. §
843 (Count 7).  *Id.*  On October 10, 2007, the Government also
filed a bill of information alleging that Prewitt had committed
the above crimes after having previously been convicted of a

1

felony drug offense under 21 U.S.C. § 851. (R. Doc. 78.) That same day, during an in-court proceeding (the re-arraignment proceeding), Prewitt pleaded guilty to both Count 1 of the indictment and the bill of information. (R. Doc. 75.) Because of Prewitt's past felony drug conviction, Prewitt was subject to a maximum penalty of life imprisonment with a term of supervised release for a minimum of ten years, a maximum fine of $8,000,000 or the greater of twice the gross gain to the defendant or twice the gross loss to any person under 18 U.S.C. § 3571, and a minimum term of imprisonment of 20 years. (R. Doc. 80.)

Prewitt also entered a plea agreement with the Government under Federal Rule of Criminal Procedure 11. (R. Doc. 80.) In Prewitt's plea agreement, the Government agreed to (1) dismiss Count 7 of the Indictment; (2) not charge Prewitt with any other violations of the federal controlled substances act that he may have committed before February 19, 2007; (3) stipulate that Prewitt timely accepted responsibility for his offense under Section 3E1.1 of the sentencing guidelines and was therefore entitled to a three point reduction in offense level; and (4) inform the Court of any cooperation Prewitt rendered prior to his sentencing. (R. Doc. 80.) In exchange, and in addition to his guilty plea, Prewitt waived his right to contest his sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255, unless the sentence imposed was in excess of the

statutory maximum. *Id.* Prewitt's plea agreement states:

> Except as otherwise provided in this paragraph, the defendant hereby expressly waives his right to appeal from his conviction and/or his sentence, including but not limited to any appeal rights conferred by Title 28, United States Code, Section 1291 and by Title 18, United States Code, Section 3742. The defendant also waives his right to contest his conviction and/or his sentence in any collateral proceeding, including proceedings brought under Title 28, United States Code, Section 2241 and Title 28, United States Code, Section 2255, on any ground, except that the defendant may bring a post-conviction claim if the defendant establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself. The defendant further waives any rights that he may have under the Freedom of Information Act as it relates to those activities set forth in the Indictment. Subject to the foregoing, the defendant reserves the right to bring a direct appeal only of any sentence imposed in excess of the statutory maximum.

(R. Doc. 80.) Since the statutory maximum was life, Prewitt waived his right to a direct appeal of his sentence.

Prewitt also signed a factual basis in which he admitted to the facts underlying his guilty plea. (R. Doc. 76.) In the factual basis, Prewitt admitted that he participated in a drug organization that conspired to obtain and distribute between 15 kilograms and 50 kilograms of cocaine and approximately 1000 pounds of marijuana. *Id.* Prewitt further admitted to using various telephone facilities to coordinate his illegal drug activities with his co-conspirators and that the Government could prove such through recordings obtained under court-authorized wire intercepts. *Id.* Prewitt admitted that he and his co-

3

conspirators traveled to Houston, Texas on Febraury 18, 2007 to purchase 3 kilograms of cocaine and 100 pounds of marijuana and that upon their return to St. Tammany Parish, Louisiana, special agents of the FBI arrested them. *Id.* And lastly, Prewitt admitted that the Government could prove that he distributed or possessed, with the intent to distribute, 5 kilograms of cocaine and 400 pounds of marijuana. *Id.*

The Court conducted Prewitt's rearrangement proceeding in tandem with the rearrangement of one of Prewitt's co-defendants. (R. Doc. 75.) During the proceeding, the Court explained to Prewitt the elements of his offense and the mandatory minimum and maximum sentences that the Court could impose. (Rearr. Tr., 5-7.) It confirmed that Prewitt's attorney explained the mandatory minimum sentence to Prewitt and also that Prewitt understood the effect of admitting to a prior felony conviction. At that time, Prewitt said he understood what the government would have to prove to convict him. (Rearr. Tr., at 10.) The Court also asked Prewitt whether he was sure he wanted to plead guilty, and he replied that he was pleading guilty because he was, in fact, guilty of the crimes for which he was charged. (Rearr. Tr., at 11.) The Court further advised Prewitt that it would not accept his guilty plea unless he was entering the plea knowingly and voluntarily.

> THE COURT: Are you pleading guilty because you are, in fact, guilty?

DEFENDANT PREWITT: Yes, Your Honor.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

DEFENDANT PREWITT: Yes, Your Honor.

(Rearr. Tr., at 20-21.) After the Government informed the Court of its understanding of the two defendants' plea agreements, the Court questioned Prewitt's co-defendant about the waiver of his appeal rights.

THE COURT: Do you understand that, in your plea agreement with the government, you have expressly agreed to waive your right to appeal your conviction or your sentence and your right to challenge either of them in any postconviction proceeding, except that you reserve the right to bring a postconviction claim for ineffective assistance of counsel that goes directly to the validity of these waivers or to the validity of your guilty plea and you have reserved the right to appeal any sentence that's above the statutory maximum? Do you understand that is the nature of your waiver of your appeal rights?

DEFENDANT HART: Yes, your honor.

THE COURT: Since the statutory maximum is life, there's no appeal right there since I can't go over that. Do you understand that?

DEFENDANT HART: Yes, your honor.

(Rearr. Tr., 15.) Though the Court did not question Prewitt directly, Prewitt stood next to his co-defendant during the proceeding when the Court reviewed the import of the waiver. Counsel for the Government confirmed that Prewitt's plea agreement contained the same waiver of appeal and summarized that waiver as allowing appeal if the Court imposed a sentence in excess of the statutory maximum. Because the statutory maximum

was life imprisonment, the Government stated that no right to direct appeal remained. (Rear. Tr., 13.) Prewitt's lawyer confirmed that he had the same understanding of Prewitt's plea agreement as the Government. Prewitt indicated to the Court that he read and understood the terms of his plea agreement and had gone over the agreement with his lawyer. He confirmed he had the same understanding as the Government lawyer and his own attorney.

THE COURT: Has each of you read the plea agreement?

DEFENDANT PREWITT: Yes, your honor.

THE COURT: Do you understand the terms and conditions of the agreement?

DEFENDANT PREWITT: Yes, your honor.

THE COURT: Have you gone over the agreement with your lawyer?

DEFENDANT PREWITT: Yes, your honor.

THE COURT: Have you signed the agreement?

DEFENDANT PREWITT: Yes, your honor.

THE COURT: Are there any agreements between you and the government concerning your plea other than what's in the plea agreement?

DEFENDANT PREWITT: No, your honor.

. . .

THE COURT: Mr. Prewitt, do you understand what the United States attorney and your attorney have just outlined for me?

DEFENDANT PREWITT: Yes, your honor.

THE COURT: Is your understanding of the plea agreement the same?

DEFENDANT PREWITT: Yes, your Honor.

(Rearr. Tr., at 12, 16.)  Prewitt also testified that he was
satisfied with the advice and services of his lawyer.  (Rearr.
Tr., at 18.)  Prewitt stated:

> THE COURT: Have you had sufficient time to discuss your
> case with your lawyer?
>
> DEFENDANT PREWITT: Yes, your honor.
>
> THE COURT: Are you entirely satisfied with the advice
> and services your lawyer has given you?
>
> DEFENDANT PREWITT: Yes, your honor.

(Rearr. Tr., at 18.)

On July 23, 2008, the Court conducted a sentencing
hearing in this matter.  (R. Doc. 162.)  At that time,
Prewitt and the Government were both provided opportunity to
present arguments concerning an appropriate sentence.
(Sent. Tr., at 2.)  At sentencing, the Court consulted the
advisory guideline range for Prewitt's offense and assigned
a total offense level of 29, with a criminal history
category of 3.  (Sent. Tr., at 3.)  This resulted in an
advisory guidelines range of 108 to 135 months imprisonment.
However, as the Court had emphasized in the rearrangement
proceeding, Prewitt was subject to a statutory required
minimum sentence, which restricted his guideline range to
240 months imprisonment.  *Id.*

At the time of sentencing, the Government moved the

Court for a departure in Prewitt's sentence under 18 U.S.C. § 3553(e) and Section 5K1.1 of the sentencing guidelines. The Government argued that Prewitt had rendered substantial assistance to the Government by testifying at a preliminary court-marshall proceeding, providing timely information regarding his co-conspirators, and deciphering telephone calls that led to the indictment of ten other individuals.

The Court, after considering the advisory guideline range, the government's motion for a sentencing departure, and all of the factors set forth in 18 U.S.C. § 3553(a), entered a judgment against Prewitt and sentenced him to a term of 156 months in prison, well below the mandatory minimum sentence. (Sent. Tr., at 7.) The Court also reiterated to Prewitt the consequences of his appeal waiver, including that Prewitt had no right to challenge his sentence on any grounds other than ineffective assistance of counsel because his sentence was below the statutory maximum. (Sent. Tr., at 8, 9.)

On July 21, 2009, Prewitt filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (R. Doc. 253.) Specifically, Prewitt alleges that his counsel, the federal public defender who was appointed to his case, provided ineffective assistance in two ways: first, by failing to explain to him his appeal rights; and

second, by failing to explain to Prewitt the nature of the charges against him and the consequences of his guilty plea. *Id*. In addition, Prewitt argues that his 156 month sentence is not reasonable in light of all the factors set forth in 18 U.S.C. § 3553(a). (R. Doc. 253).

## II. DISCUSSION

### A. TIMELINESS

Section 2255 provides as follows:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. This Court received Prewitt's motion for relief on July 21, 2009, which was within one year after Prewitt's conviction became final. Prewitt therefore timely filed his § 2255 motion.

### B. WAIVER OF APPEAL

Prewitt argues that his lawyer did not advise him that he could appeal. (R. Doc. 253.) This argument is rebutted by his plea agreement, which Prewitt admitted he understood and reviewed with his lawyer, and in which Prewitt expressly agreed to waive the appeal and collateral challenge rights conveyed by Title 28, United States Code, Sections 1291, 2241, and 2255, and by Title 18, United States Code, Section 3742. (R. Doc. 80.)

Further, the Court finds Prewitt's waiver provision was knowingly and voluntarily entered. A defendant may waive his statutory right to appeal as part of a plea bargain agreement. *See United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). A knowing and voluntary waiver of the right to bring a post-conviction proceeding bars a petitioner from receiving post-conviction relief. *See United States v. Wilkes*, 20 F.3d 651, 655 (5th Cir. 1994). Moreover, under Fifth Circuit precedent, "when the record of the [rearraignment] hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994); *see also United States v. Arenas-Guitierrez*, 7 F.3d 1143 (5th Cir. 1996).

There is no indication that Prewitt's waiver of appeal was unknowing and involuntary. First, Prewitt's plea agreement informed him of his right to appeal and that by entering into the plea agreement, Prewitt would forfeit that right. (R. Doc. 80.) Second, nowhere in the record is there any indication that Prewitt did not understand the plea agreement or was confused by the appeal waiver provision. *See United States v. Baty*, 980 F.2d 977, 978-79 (5th Cir. 1992)(confusion regarding the waiver provision). The Court went over the waiver provision at Prewitt's rearrangement proceeding, the Government specifically stated that Prewitt had waived his appeal rights and Prewitt confirmed that his understanding of the plea agreement was the same as the Government's. Further, the Court asked Prewitt directly if he had read and understood his plea agreement. (Rearr. Tr., at 12.) Prewitt responded that he did, and he did not raise any questions regarding the waiver-of-appeal provision. *Id.* Nor did he do so at his sentencing proceeding some nine months later. (Sent. Tr.) Rather, Prewitt confirmed that the entire plea agreement had been read to him before signing it, that he discussed the plea agreement with his lawyer, that he understood it, that all of the terms of the agreement were contained in the document, and that he was voluntarily and freely entering into the agreement. (Rearr. Tr., at 15-17.) Moreover, the Court reviewed the effects of the identical waiver of appeal

at his re-arraignment proceeding with his co-defendant. *Id.; compare with Portillo*, 18 F.3d at 292 (no Court investigation into defendant's understanding of his waiver of appeal); *see also United States v. De Cay*, No 05-186, 2009 WL 98209 at *6 (E.D.La. Apr. 9, 2009)(Barbier, J.) (statements in open court "belied defendant's claims that he did not subjectively understand the extent and nature of his waiver of appeal").

## C.    INEFFECTIVE ASSISTANCE OF COUNSEL

In a Section 2255 petition alleging ineffective assistance of counsel, the petitioner bears the burden of proof. *See Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000). To establish a claim of constitutionally ineffective assistance of counsel, a petitioner must show both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A petitioner must meet both prongs of the *Strickland* test to succeed. *See id*. at 687. On the first prong, the Court applies a highly deferential standard to the examination of counsel's performance. *See id*. On the second, or prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A

12

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. If a petitioner fails to establish either deficient performance, or actual prejudice, the Court may dispose of the claim without addressing the other prong. *See* id. at 697.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied the *Strickland* test to cases involving guilty pleas. In the context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Under the first prong of the *Strickland* test, if a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotations omitted). To meet the prejudice prong, a petitioner must establish that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Id*. at 59; *see also Armstead*, 37 F.3d at 206 (citing *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)).

### 1. *Waiver of Appeal*

A waiver of appeal "may not be enforced against a [§] 2255 petitioner who claims that ineffective assistance of counsel

13

rendered that waiver unknowing or involuntary." *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002). "An ineffective assistance of counsel claim survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself." *White*, 307 F.3d at 343. .

To the extent that Prewitt argues that he received ineffective assistance of counsel, the record does not support his claim. *See, e.g.*, *United States v. Flores*, 135 F.3d 1000, 1002 (5th Cir.1998) (affirming dismissal of § 2255 motion based on allegations that were "fatally conclusory and without merit"). As stated previously, Prewitt knowingly and voluntarily waived his appeal rights: Prewitt admits that he read and signed the written agreement stating that he was waiving any right to appeal or collaterally attack his conviction and sentence in "any post-conviction proceeding, including but not limited to a proceeding under [§ 2255]." (Rearr. Tr., at 15-17.) Prewitt did so under oath on *two* different occasions. The first admission was in Prewitt's rearraignment proceeding just after the Government had summarized Prewitt's plea agreement in open court and submitted the agreement to the Court:

> COURT: Mr. Prewitt, do you understand what the United States attorney and your attorney have just outlined for me?
>
> DEFENDANT PREWITT: Yes, your honor.
>
> COURT: Is your understanding of the plea agreement the same as what they told me?

DEFENDANT PREWITT: Yes, your honor.

(Rearr. Tr., at 14.) Prewitt then verified for the Court that he
had reviewed the plea agreement with his lawyer and that the no
side agreements existed between himself and the Government. *Id.*

> COURT: Have you gone over the agreement with your lawyer?
>
> DEFENDANT PREWITT: Yes, your honor.
>
> COURT: Have you signed the agreement?
>
> DEFENDANT PREWITT: Yes, your honor.
>
> COURT: Are there any agreements between you and the government
> concerning your plea other than what's in the plea agreement?
>
> DEFENDANT PREWITT: No, your honor.

(Rearr. Tr., at 12, 16.) Prewitt also testified that he was
satisfied with the advice and services of his lawyer. (Rearr.
Tr., at 18.) Prewitt stated:

> THE COURT: Have you had sufficient time to discuss your case
> with your lawyer?
>
> DEFENDANT PREWITT: Yes, your honor.
>
> THE COURT: Are you entirely satisfied with the advice and
> services your lawyer has given you?
>
> DEFENDANT PREWITT: Yes, your honor.

(Rearr. Tr., at 18.) The second occasion was at Prewitt's
sentencing:

> COURT: Mr. Prewitt, in your plea agreement, you have
> agreed to waive your right to appeal your sentence
> unless it was above the statutory maximum . . . .
> Because the sentence I imposed is . . . a downward
> departure from the guideline range, you have no right
> to appeal your sentence on any grounds other than

> ineffective assistance of counsel.  Do you understand
> that, sir?
>
> DEFENDANT PREWITT: Yes, ma'am.

(Sent. Tr., at 8, 9.)  These admissions refute Prewitt's claim
that he did not understand the effect of his waiver of appeal.
Thus, even if Prewitt's attorney did not fully advise Prewitt of
his appeal rights, the record demonstrates that Prewitt
understood that he had a right to appeal his sentence, and that
he forfeited that right by accepting the plea agreement offered
to him by the Government.  *Id.* at 1006; *see also De Cay*, 2009 at
*10 ("[T]he relief sought by [the defendant] would render the
Rule 11 colloquy, and perhaps the entire plea process, irrelevant
if a defendant who has pleaded guilty and is not satisfied with
his sentence can simply claim that his attorney did not 'go over
[the] plea agreement ... line by line, paragraph by paragraph, or
even page by page" to defeat his appeal waiver based on his
subjective and self-serving lack of understanding of the
waiver.'")  Because Prewitt knowing and voluntarily agreed to
waive his right to appeal, and admitted that he did so, Prewitt's
ineffective assistance of counsel argument does not meet the
prejudice prong of *Strickland*.  *See United States v. White*, 307
F.3d 336, 341 (5th Cir. 2002)(explaining that when a plea is
knowing and voluntary, there is "no need to except ineffective
assistance of counsel claims from the general rule allowing

defendants to waive their statutory rights so that they can reach a plea agreement").

### 2. *Plea Agreement*

Prewitt nevertheless contends that his plea also was tainted by ineffective assistance of counsel. (R. Doc. 253.) He asserts that his counsel failed to explain the nature of the charge and the consequences of his plea. *Id.* Specifically, Prewitt argues that his counsel did not inform him that he was "pleading to all the relevant conduct of [his] co-defendants." Accordingly, the Court will consider whether Prewitt received ineffective assistance of counsel with respect to his plea. *Id.*

First, Prewitt has not shown that his counsel's performance in counseling him to accept a plea agreement was deficient. The record belies any claim that Prewitt's counsel pressured him to accept the plea agreement. Prewitt responded negatively when asked at his re-arraignment whether he had been threatened to make the agreement, and he repeatedly affirmed that he was pleading guilty voluntarily. (Rearr. Tr. at 18-20.) Moreover, Prewitt has produced no evidence that would refute his own sworn testimony that he was pleading guilty voluntarily. (R. Doc. 253.)

Second, that Prewitt's counsel successfully negotiated a plea agreement under which Prewitt received substantial benefits indicates that his counsel's performance was not deficient. As a

result of the plea agreement, the Government dropped Count 7 of the indictment, agreed not to charge Prewitt with any violations of the federal controlled substances act that he may have committed before February 19, 2007, and also stipulated that Prewitt had timely accepted responsibility and was entitled to a three point reduction in offense level under the sentencing guidelines. (R. Doc. 80.) Also as a result of Prewitt's plea agreement, the Government stipulated, for sentencing purposes, that the amount of cocaine Prewitt distributed or possessed was less than the total obtained and distributed by the conspiracy with which he was involved. Moreover, Prewitt chose to cooperate with the Government in its ongoing investigation into his co-conspirators activities when he signed his plea agreement. As a result, the Government agreed to bring to the Court's attention any cooperation Prewitt rendered that amounted to substantial assistance under Section 5K1.1 of the sentencing guidelines. The Government later did so by moving the Court for a downward departure from Prewitt's recommended guidelines sentence. Unless acquitted at trial, Prewitt's cooperation and the Government's departure motion were the only way in which Prewitt's sentence could have been reduced below the mandatory minimum sentence of 20 years. In return for these benefits, and to avoid the substantial risk that he would be convicted on charges that would subject him to a potential life sentence, Prewitt agreed, among

other things, to plead guilty to Count One of the indictment, the bill of information, and to waive his right to appeal his sentence. Prewitt also cooperated with the Government. When the Court granted the Government's departure motion, it imposed a sentence below the sentence recommended by the Government. The Court is unable to say that counseling Prewitt to accept this plea agreement falls outside the range of competence required of a defense attorney under the deferential *Strickland* standard. *See Gilliard v. Scroggy*, 847 F.2d 1141, 1145 (5th Cir. 1988)(advice to plead guilty was not deficient under *Strickland* standard).

Further, the Court finds no evidence to support Prewitt's assertion that he received ineffective assistance of counsel because his counsel did not ensure that he understood that he was "pleading to all the relevant conduct of [his] co-defendants." (R. Doc. 253.) As a threshold matter, Prewitt was not held accountable for all the acts of his co-defendants. Even though Prewitt admitted to participating in the conspiracy, the Government did not charge him with distributing or possessing the entire amount of cocaine and marijuana involved in the conspiracy. As previously noted, the Government agreed to lessen the charge against Prewitt for sentencing purposes. In fact, Prewitt's counsel references this agreement when she argued for leniency at his sentencing. (Sent. Tr., at 5.)(arguing that

Prewitt "was not at the top of this food chain."). Prewitt also confirmed during his re-arraignment that he understood the nature of the crime for which he was pleading guilty. (Rear. Tr., at 9.) Evan assuming, *arguendo*, that Prewitt did not know that a participant in a conspiracy can be convicted for the acts of his co-conspirators, *see Pinkerton v. United States*, 328 U.S. 640, 647 (1943), Prewitt clearly understood the consequences of his plea. At the rearraignment proceeding, the Court informed Prewitt that he faced a statutory maximum sentence of life and a mandatory minimum of twenty years. (Rearr. Tr., at 4-6.) Prewitt stated that he understood that the Court would decide what sentence to impose if the Court accepted the plea agreement and that the sentence would be based on any applicable mandatory minimum and the Court's analysis of the sentencing guidelines and other applicable statutory factors. (Rear. Tr., at 6, 14.) Prewitt's counsel affirmed that she had not made any representations as to what sentence the Court would actually impose, other than to explain the mandatory minimum sentence. (Rear. Tr., at 15.) The record therefore rebuts Prewitt's unsupported assertions that his counsel's performance was defective with respect to her advice regarding the plea agreement.

Prewitt has also not met the prejudice prong of *Strickland* because he has not shown that, but for his counsel's allegedly

erroneous advice, he would not have pleaded guilty.  Whether a
petitioner is able to argue persuasively that he was prejudiced
by erroneous advice depends partly on his chances for success at
trial.  *See Magnum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995);
*Armstead*, 37 F.3d at 210-11 (noting that strong evidence of
defendant's guilt and longer potential sentence if convicted
refuted defendant's assertion that but for counsel's advice, he
would have rejected the plea bargain).  Furthermore, by pleading
guilty instead of proceeding to trial, Prewitt avoided a
substantial risk that he would be convicted of a charge that
carried a mandatory life sentence.  Moreover, as a result of
Prewitt's plea agreement and the substantial assistance he
rendered to the Government with its ongoing investigation, the
Government asked the Court for a downward departure in sentencing
Prewitt, and the court departed below the amount asked for by the
Government.  Prewitt has produced no evidence, and the Court
finds it unlikely that, under the circumstances, *i.e.*, the
favorable, negotiated plea, the evidence the government had
against Prewitt, the possibility the Government might ask the
Court to downward depart in sentencing Prewitt, and the potential
consequences of proceeding to trial, Prewitt would have decided
to proceed to trial but for the allegedly erroneous advice he
received.  *See Magnum*, 67 F.3d at 86.  Prewitt has therefore
failed to demonstrate either deficient performance or prejudice,

and his claim that his counsel rendered ineffective assistance that invalidates his plea must fail.

**D.      REASONABLENESS OF SENTENCE**

Prewitt waived the right to appeal the reasonableness of his sentence in a collateral proceeding.  His motion to vacate, correct, or set aside his sentence due to its unreasonableness is therefore DENIED.

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES Prewitt's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

New Orleans, Louisiana, this <u>1st</u> day of April, 2010.

*Sarah Vance*

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE